**COCHRAN v. BURDICK et al.**

No. 6733.

United States Court of Appeals for the District of Columbia.

Argued Jan. 6, 1937.

Decided Feb. 23, 1937.

832

Harry Friedman and Joseph T. Sherier, both of Washington, D. C., for appellant.

T. S. Plowman, Charles L. Frailey, and Frank F. Nesbit, all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

VAN ORSDEL, Associate Justice.

This is an appeal from a decree of the Supreme Court of the District of Columbia (now the United States District Court for this District), dismissing appellant's bill in equity for an accounting and settlement under a partnership agreement dated January 13, 1930, after hearing on bill and answers.

This case has previously been before us upon an appeal from a decree of the lower court granting a motion to dismiss 63 App. D.C. 150, 70 F.(2d) 754. We held that the bill stated a good cause of action and remanded the case.

At the threshold we are confronted with a motion to dismiss or affirm, on the ground that appellant has violated paragraph 9 of rule 5 of this court, which provides that errors assigned "shall be separately and specifically stated." The court postponed consideration of the motion until the hearing on the merits. While it is true that the assignments of error are very general in their nature, and not as specific as they might be, or as the rule contemplates, yet, inasmuch as six of the nine assignments deal with the findings of fact and conclusions of law, and the objections and exceptions thereto, we are of the opinion that the motion should be denied and the appeal considered on its merits.

Appellant's bill sets forth that on January 13, 1930, he was a member of the bar of the Court of Appeals of this District (he was not a member of the bar of the lower court), and was admitted to practice before the Interior Department; that the defendant Burdick was admitted to practice before all the courts of the District, but was a nonresident of the District and did not maintain an office here, being engaged in active practice in New York; that the defendant Dunn was an accountant, admitted to practice before the Interior Department, and was engaged in prosecuting claims arising under the War Minerals Relief Act (Act March 2, 1919, § 5, as amended by Act Nov. 23, 1921, 50 U.S.C.A. § 80 note); that the defendant Dougherty was an attorney admitted to practice before all the courts of the District.

On January 13, 1930, plaintiff and defendants Burdick and Dunn entered into a contract whereby plaintiff agreed to look after the preparation and filing of the necessary petitions in the Supreme Court of the District of Columbia in the War Minerals Claims held by Burdick, and, if necessary, to "handle these claims through to completion and final disposition on appeal." Some of the petitions were to be filed in the name of plaintiff, and others in the name of Burdick, giving his Washington address as in plaintiff's office in the Munsey building. It was agreed that the fees should be divided 50 per cent. to plaintiff and Dunn and 50 per cent. to Burdick. The contract further provided: "Mr. Cochran is to act as counsel in all of these petitions and attend to all litigation, pleadings, motions, appeals, briefs, and so forth, subject to my general supervision of the cases, in which my name appears as attorney. Mr. Dunn is to assist Mr. Cochran and me generally in collecting data, recommendations, and decisions of the Secretary of the Interior and preparation of petitions, appeals, briefs, and so forth. * * * This agreement supersedes and is in lieu of all other agreements between me and Mr. Dunn." This proposition was submitted in writing, signed by Burdick, and was accepted by Cochran and Dunn.

It is further alleged that prior to the execution of this agreement Burdick had employed Dunn to look after his claims in Washington, agreeing to pay Dunn a portion of the fees received by him, but that the present agreement superseded the prior arrangement; that, simultaneously with the execution of the above agreement, plaintiff and Dunn agreed between themselves to

divide all amounts received under the agreement on a basis of 40 per cent. to plaintiff and 60 per cent. to Dunn; that pùrsuant to the agreement plaintiff and Dunn prepared and filed in the Supreme Court of the District of Columbia some 47 cases; that, after many of the suits had been filed, the Bar Examiners of the District ruled that plaintiff could not appear generally in the cases, not being a member of the bar of the lower court, but could appear upon motion in each case provided he associated with him a member of the bar of the court; that plaintiff thereupon, "with the consent and knowledge of the defendants Burdick and Dunn," associated with him the defendant Dougherty, agreeing to pay Dougherty 10 per cent. of all fees received by him; that thereafter plaintiff performed all services required of him when necessary under the agreement; and that on October 31, 1931, Burdick notified plaintiff that the agreement was canceled.

It is further alleged that Burdick continued to use the services of Dunn and Dougherty under a new agreement for division of fees in the cases covered by the original agreement of January 13, 1930, to the exclusion of plaintiff and for the purpose of cheating and defrauding him; that Burdick, Dunn, and Dougherty have effected settlements in a number of cases covered by the agreement of January 13, 1930, and have received, or are about to receive payment on said claims; and that Burdick refuses to account to plaintiff for any portion of the fees already received by him. Plaintiff then prays that a lien for his fees be impressed upon funds coming into Burdick's hands in connection with these cases, and for an accounting.

Burdick answered, admitting the execution of the agreement but alleging that he was induced to enter into it by reason of the false and fraudulent representation of the plaintiff that he was a member of the bar of the Supreme Court of the District of Columbia; that he did not know that plaintiff had associated Dougherty with him, and immediately upon discovering that fact discharged Dougherty; and that upon discovering the fraud perpetrated by plaintiff he canceled the agreement.

Dunn filed an answer denying that plaintiff had informed Burdick that he (plaintiff) was a member of the bar of the Supreme Court of the District, and alleging that upon receiving notice of Burdick's cancelation he immediately informed plaintiff that their agreement on a 60-40 basis was also canceled; that in February, 1932, he entered into a new and independent arrangement with Burdick under which his services were thereafter rendered; and that he received no fees whatever from Burdick in connection with the claims listed by plaintiff.

Dougherty answered, alleging that the petitions in the cases filed were prepared either by Dunn or by Cochran, or both, but were filed in his name as attorney; that plaintiff stated he was not qualified to file the petitions; that he was retained with the knowledge and consent of Dunn; that when he informed Burdick that he had calendared the cases for trial he was discharged by Burdick, who stated that Cochran had no authority to employ him; that he has not rendered any services to Burdick since October, 1931; and that he has not entered into any new agreement with Burdick or received any fees from him, either directly or indirectly.

The lower court in its findings of fact found that, by reason of the representations of plaintiff and Dunn, Burdick had been induced to enter into the agreement with plaintiff and Dunn, upon the understanding that plaintiff was a member of the bar of the Supreme Court of the District of Columbia, and was legally qualified to appear as an attorney of record in the cases in which Burdick desired him to take part; and that the representations of plaintiff and Dunn were made "in a manner to cause Burdick to believe, and he did so believe, that he was being informed that Cochran was a member of the bar of this court and entitled as a matter of right to appear as attorney of record in cases brought under the War Minerals Relief Act." The court also found that this was a material matter to Burdick and was the inducement for him to enter into the agreement with plaintiff and Dunn, and that by virtue of these false representations Burdick was justified in canceling the agreement.

The findings of fact by the court are amply supported by the evidence in the case, and will be so considered without a detailed analysis of the testimony. The case turns upon a single question of law. It is urged by plaintiff that there was a failure on the part of defendant Burdick to establish the defense of fraud, in that he failed to show that he had sustained any damage. This point would be pertinent if this were an action at law for deceit or a suit in equity for a rescission of the con-

834

tract, but another situation is presented here.

■ Plaintiff is seeking the aid of a court of equity for an accounting under the contract which Burdick, upon discovery of Cochran's false representation, himself rescinded. This Burdick had a legal right to do, whether or not he could establish actual damage. The contract was clearly voidable at Burdick's option, since he was misled by plaintiff into entering into it upon the representation that plaintiff was a member of the bar of the Supreme Court of the District, when in fact Cochran was not a member of that bar, either at the time the contract was executed or when it was rescinded. In the case of Fox v. Tabel, 66 Conn. 397, 34 A. 101, where the plaintiff had induced the defendant to enter into a contract upon the false representation that he was the agent of a certain cemetery company, and when the falsity of the representation was discovered defendant rescinded the contract, the court, in affirming a judgment for defendant, said: "The plaintiff contends that his fraud was immaterial, because it does not appear that the defendant sustained any damage from it. It is enough that it does appear that the fraud was intended to induce her to execute the contract, and that it had that effect. The plaintiff cannot ask the court to help him to profit by his own wrong. But the defendant was not bound to prove damage. A man has a right to choose whom he will employ."

■ Appellant's case is completely disposed of under the rule that, where a plaintiff's conduct is tainted with fraud, he is without standing in a court of equity. Equity will refuse relief to a suitor who approaches with unclean hands, whether it is due to conduct which technically constitutes fraud, or which is unconscionable. The court below, therefore, was clearly correct in holding that "plaintiff is not entitled to the relief or any portion of the relief prayed for in his bill of complaint."

Nor is there anything in plaintiff's contention that our decision in the former case (63 App.D.C. 150, 70 F.(2d) 754) established "his right to an accounting." This is not correct. We said there that the contract established a relationship in the nature of a special partnership, and that

equity will assume jurisdiction of matters of accounting between partners. Equity has taken jurisdiction of the instant case, but after hearing the court has determined, and correctly so, that appellant is not entitled to the relief sought.

A partnership case directly in point is Miller v. Kraus (Cal.App.) 155 P. 834, 836; application for rehearing denied by Supreme Court of California, 155 P. 838. There Miller sued Kraus for an accounting. The court found that Miller had induced Kraus to enter into the partnership agreement by false representations. The court held that Miller did not come into court with clean hands, and that Kraus was entitled to have the partnership judicially dissolved, "without an accounting to plaintiff of his interest therein." Affirming the judgment, the appellate court said: "But the sole theory of the defense interposed by the defendant and upon which the decision proceeded is that the establishment of the copartnership between the parties was the direct result of actual fraud practiced by the plaintiff upon the defendant, and that a court of equity will not grant relief to a party as to a transaction tainted by his own fraud, but will leave or remit him to whatever remedy he may have at law for the injury he claims to have suffered from the act or acts of the defendant."

■ The principle here involved is well defined in Pomeroy's Equity Jurisprudence, vol. 1, § 397, as follows: "Whenever a party who, as actor, seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him in limine; the court will refuse to interfere on his behalf, to acknowledge his right, or to award him any remedy."

The present case comes clearly within the principle above stated. The agreement creating a special partnership relation between Burdick, plaintiff, and Dunn was procured through fraudulent representations to Burdick. Cochran, who was the principal actor in the perpetration of the fraud, is in no position to come into a court of equity to seek relief.

The decree is affirmed, with costs.