## ALLMAN v. WINKELMAN.
### No. 8870.

Circuit Court of Appeals, Ninth Circuit.
Sept. 16, 1939.

664

J. F. Resleure and Clarke M. Weigand, both of San Francisco, Cal. (Roy G. Allman, of Shanghai, China, of counsel), and Charles S. Lobingier, of Washington, D. C., for appellant.

Frederick M. Fisk, Donald M. Gregory, and Chickering & Gregory, all of San Francisco, Cal., and H. G. Sellett, of Shanghai, China, for appellee.

Before DENMAN, MATHEWS, and STEPHENS, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from an adjudication in equity of the United States Court for China that a contract of "partnership for the general practice of law" in Shanghai and elsewhere in China, made between appellant and appellee is "illegal, void, contrary to public policy and not enforceable" and decreeing a rescission of the contract and awarding as damages to plaintiff the consideration paid by him to defendant for entering into the contract less benefits received by plaintiff from the joint practice under the "void" agreement.

In the briefs and argument here the contending parties agree that the burden of proof on plaintiff to establish that a contract is void as against public policy is that held in Steele v. Drummond, 275 U.S. 199, 205, 206, 48 S.Ct. 53, 54, 72 L.Ed. 238, and its cited cases that: " * * * The meaning of the phrase 'public policy' is vague and variable; there are no fixed rules by which to determine what it is. It has never been defined by the courts, but has been left loose and free of definition, in the same manner as fraud. * * * It is only in clear cases that contracts will be held void. The principle must be cautiously applied to guard against confusion and injustice. * * * Detriment to the public interest will not be presumed, where nothing sinister or improper is done or contemplated. * * * ."

Here the contract was made and was to be performed in Shanghai, China, and the question whether there was a contravention of public policy must be considered in the light of the customs and laws of that place. With respect to the practice of the law both with and without litigation, appellee admitted below and here, and the lower court found: "That as a matter of fact and law under the comity and usage in the practice of law in China the association of non-American lawyers with American lawyers is *entirely legal and proper*. That American lawyers are frequently associated with Chinese and foreign lawyers *in the practice of law* in China and frequently appear in the various extraterritorial courts in China as counsel of record with foreign lawyers; that foreign lawyers frequently appear in the United States Court for China as counsel of record in causes therein pending and American lawyers frequently appear as counsel of record in the Chinese and foreign extrater-

ritorial courts in China in the cases therein pending. That it is common knowledge that qualified lawyers in various extraterritorial courts, of different nationalities, associate together in important cases and share the fees therein." (Emphasis supplied.)

Both appellant and appellee are attorneys at law practicing in Shanghai, China. Appellee, a Netherland subject, is licensed to practice in the extraterritorial Netherland Consular Court for Mid-China, and by long established rules of international comity, because licensed in one of the 16 other extraterritorial Consular courts situate in Shanghai, recognized by the extraterritorial United States Court for China, is entitled to practice in the latter court and in all the Consular Courts in China.

Appellant, a citizen of the United States, is licensed to practice in the United States Court for China and entitled by the same international comity to practice in the Netherlands, British and other Consular Courts.

With regard to advice either might give concerning the legality of transactions other than those in litigation, no United States law is shown that prohibits even a person unlicensed from giving it. It is safe to say that in the majority of American mercantile and foreign commerce cities, there is no ethical or moral condemnation of a marine or fire or accident insurance agent, though not a lawyer, advising another in the same profession on the legal effect of policy provisions, and many such agents acting for the insured are required, in the exercise of their respected profession, to advise the insured of their legal effect. So do shipping men and average adjusters and, in fact, men in all branches of business, advise one another on the legal effect of transactions in which they are interested.

Compensation for such advice is not determinative. The insurance agents, average adjusters, and the like, are compensated for such legal advice and a lawyer's advice to his client establishes a professional relationship though it be gratis. We are unable to see any difference in public policy between this permissible legal advice of a non-lawyer and that of an individual lawyer in Shanghai, licensed, say, by The Netherlands or the United States courts, and practicing in other extraterritorial courts, advising in transactions involving the law of countries other than that of

the bar of which he is a licensed member. A law partnership with a layman is a different thing, for it may be deceptive in the representation that he has the special skill arising from a legal training, but that is not the situation here.

Shanghai is one of the greatest centers of international commerce in the world. Importing and exporting firms necessarily must have constant need of advice concerning the legal effect under the laws of many countries of bills of lading, charter parties, commercial paper, contracts of purchase and sale and average adjustments with the cargoes of shippers of many nationalities. Most of them will be construed under one or the other of two major systems of law—the civil law of the Code Napoleon, modified by statutes of continental European countries such as The Netherlands, and the Anglo-Saxon common law, again modified by statutes, as in the United States.

It is obvious that an association of a licensed civil law lawyer, like the plaintiff, and a common law lawyer, like the defendant, would be of great value to any European or American firm resident in China and having a general export and import business there. It would be a normal thing to seek to have maintained inviolate in one group of lawyers, bound together by their professional ties and their self interest, knowledge of a mercantile or shipping company's business and trade secrets, rather than have such knowledge divided among several separate lawyers.

In such a business community plaintiff and defendant entered into the "partnership for the general practice of law". In the contract a blank space was left for the firm name. In the partnership's practice that followed their letterhead read:

"Roy G. Allman            Cable Address:
"J. L. Winkelman         Allwin, Tel: 10933
            "Allman & Winkelman
                "Attorneys at Law
                "205 Hamilton House
                "Shanghai, China".

It is not claimed that any misrepresentation of any kind was made directly to any client or court as to the character of the partnership business, nor that any wrongful act was contemplated by the partners, unless the existence of the partnership was in itself wrongful. The letterhead told the truth for, as stated, each man in the firm was an attorney at law licensed to practice in the court of his nation and enti-

tled to practice in all the other extraterritorial courts. Professional advice in letters over the firm name, with each member entitled to practice in so many courts, would in no way be deceptive to any one as to any special qualifications of the firm or member within it, any more than such a firm signature written by a specialized member, such as a patent or admiralty or land law member, of any one of the great and highly departmentalized firms in the United States.

The record contains no evidence sustaining appellee's burden of proof that in a law practice in Shanghai there is any public policy violated by a law partnership such as here existed. Despite our searching questioning at the argument, there was suggested no greater likelihood of wrong to any litigant in the course of the legal service of either lawyer, because in a continuous partnership relationship, than in the admittedly legal associations in the practice of law of two such qualified men. By virtue of the comity in the extraterritorial courts of Shanghai each lawyer, in court in litigation and out of court in advice to clients, was legally entitled to do everything that could be done by any lawyer regularly admitted to the bar of the United States Court for China.

The trial judge, stated in his opinion that no partnership between an American and non-American has ever existed in China. There is nothing in the evidence to support such a statement and appellee is not entitled to have it considered as supporting his burden of proof. No rule of court is shown to have existed prohibiting such a partnership contract nor can such an unsupported statement establish such a rule and, retroactively, make the contract void.

The lower court refers to certain rulings of a committee of the American Bar Association, but it is obvious that the committee did not have in mind the peculiar situation in Shanghai. The partnerships discussed by the committee were between members of the bar of a state court and persons, unlike appellant and appellee, who were not entitled to practice for their clients in that court.

The lower court regards the partnership as an entity and not amenable to its discipline for violations of professional obligations. We are unable to agree. Obviously both partners are liable to punishment for contemptuous conduct in the court room and, as for wrongdoing to a client elsewhere, the client would have his redress against appellee by forfeiture of the latter's right to practice in the United States Court and his disbarment in his Netherlands court. With the burden of proof on appellee, he cannot ask us to assume that the standards of professional obligations of a lawyer to his client are any lower in the Netherlands than in the several American states or the United States, or that the courts of the Netherlands are any the less vigilant in exercising their discipline to maintain them. As for damage suffered by the client for unprofessional conduct, the partnership would make both lawyers liable though but one offended.

In the United States it is a common and recognized practice to form partnerships in which one partner is not admitted to practice in the court in which another partner is a member of its bar. District of Columbia lawyers, practicing only in the federal courts there, have partnerships with lawyers of the different states. Neither the state lawyer is subject to the discipline of the courts of the District, nor the Washington lawyer to the courts of the state of his partner. Often the partners live and practice hundreds if not thousands of miles apart from one another. The Court of Appeals of the District of Columbia has held a partnership in which one of the attorneys was not a member of the bar of the court in which the litigation was to be conducted not against public policy. Cochran v. Burdick, 63 App.D.C. 150, 70 F.2d 754, 755. The contract in that case involved litigating some 47 cases and is called a special partnership, but, so far as concerns public policy, we are unable to distinguish a partnership dealing with 47 clients from one having a more or less number of clients during the indefinite period of a general partnership. The case before us has the added significant factor that the partner not admitted to the bar of the United States Court had a recognized and established comity status there by virtue of which, in litigating for his clients, he could do everything for his client in that court which he could do as a regular member of its bar.

There is a dictum of the British extraterritorial court in China that British law prohibits partnership between a British and a non-British barrister, but in the same dictum it is said that a British barrister

even cannot be employed by a non-British barrister. Such a rule is unknown in the American law, which in various ways differs from the British with regard to the relation of the lawyer to the court and to his litigant.

The bill of complaint seeking the equitable remedy of rescission had a prayer for general relief, and the pleadings may be construed as raising an issue of damages for breach of a valid contract. The bill alleges a failure of appellant to advise appellee that the judge for the United States Court for China, on reading the firm's letterhead, had criticized the forming of the partnership. The evidence and findings are that, just before this failure to disclose the criticism, appellee had been charged in the Shanghai municipal court and convicted of disorderly conduct and sentenced to six days' detention. The sentence was suspended and hanging over appellee and also in a most damaging way over the partnership at the time of the non-disclosure. At the time of an attempted termination of the partnership by appellee he had again been convicted of drunken and disorderly conduct and another six days' detention imposed with an order that the prior sentence also should be served. Appellee in his reply to defendant's answer made the extraordinary contention that appellant, his partner, was not affected in professional standing by these convictions and conduct of appellee which the latter admits was that he "proved himself to be grossly negligent and incompetent, continually indulged in acts of drunkenness, at one time attempting to commit suicide, engaged in fights and altercations with the Police and committed various acts of violence and disorderly conduct in public places".

The lower court's opinion, while criticizing the appellant for his part in creating the partnership, omits any consideration of appellee's conduct. We do not agree with the court that this conduct of appellee, and his admitted extraordinary concept of the obligations of one professional partner to another, should be omitted in what the court terms its "weighing of the equities" and that weighing confined to the failure of the other to disclose a criticism of the partnership, which the latter believed, and we hold, was unwarranted. Rather, we hold that in seeking any relief in equity with respect to the partnership appellee's hands were unclean. Cochran v. Burdick, 67 App.D.C. 87, 89 F.

2d 831, 834; Pomeroy's Equity Jurisprudence, 4th Ed., Vol. 1, § 397.

The decree is reversed with instructions to enter one holding that plaintiff below take nothing by his bill of complaint and for costs to defendant.

Reversed.