**Esther EDEN, Appellant**

v.

**Philip R. LAURIAT et al., Appellees.**

**No. 14946.**

United States Court of Appeals District of Columbia Circuit.

Argued Sept. 22, 1959.

Decided Oct. 29, 1959.

See also 103 U.S.App.D.C. 2, 254 F. 2d 339.

Mr. Herman Miller, Washington, D. C., for appellant.

On direction of the court, the case for appellees was submitted on their brief. Mr. Cornelius H. Doherty, Washington, D. C., was on the brief for appellees.

Before EDGERTON, BAZELON and BURGER, Circuit Judges.

PER CURIAM.

Appellant asked for a declaratory judgment and an injunction to restrain foreclosure of a deed of trust securing a promissory note. This appeal is from a judgment dismissing the complaint. We find no error.

Affirmed.

BURGER, Circuit Judge (concurring in the result).

I would dismiss this appeal as frivolous, not in good faith, and maintained solely for the purpose of delay. 62 Stat. 963 (1948), 28 U.S.C. § 2106 (1958); Jimenez v. Barber, 9 Cir., 1958, 252 F.2d 550.

The facts of the controversy are simple. Appellant purchased certain property at a foreclosure sale on or about August 1, 1956; the property was subject to a note and prior deed of trust calling for monthly payments of $82.50, and containing the conventional acceleration clause. At the trial below appellant urged that sometime before the sale a third party or parties, other than the holder of the note in question, informed him that the holder would reduce the payments to $70.00 per month, and that it was on the basis of that "representation" that he purchased the property. The evidence conclusively shows that the holder of the note made no such promise. Indeed, before final closing, the holder specifically informed appellant that he

*would not* consent to any reduction in monthly installments. Notwithstanding this, appellant tendered payments in the sum of $70.00 per month, although the note called for $82.50, and, in the face of repeated demands over several months to make good the arrearage, appellant repeatedly refused to do so. At one point, in answer to a demand for the difference, appellant wrote: "I suggest you accept this money [$70.00 per month] every month and stop acting like a little boy who wants a red lollypop and is getting a green one."

After the note had been in default for six months, the holder notified appellant that he was invoking the acceleration clause, and demanded full payment or foreclosure proceedings would commence. Appellant neither offered to pay the current deficiency nor to make full payment, but instead threatened to enjoin foreclosure.[1] This threat was acted on when appellant finally sought such an injunction, which was denied. It is from denial of that injunction that this appeal lies. Not until the hearing on the injunction did appellant finally offer to make good his default.

The above facts abundantly support the District Court's finding that appellant did not come into court with "clean hands," and that finding is not attacked here. Hence it is plain that appellant had been defaulting continuously for many months before the holder threatened action, and that appellant's defaults were part of a deliberate and persistent plan to force a modification of the note in the appellant's favor, using the threat of litigation and its attendant expense as a lever. It was only after the plan failed, and foreclosure was imminent, that appellant offered to make good his default, an offer which he now seeks to use to show good faith.

The ground on which appellant relies is that equity should not permit a forfeiture for his refusal to pay "so trivial" a sum as was involved in his default, since he offered to correct the default before the foreclosure sale. While it is true that in some circumstances, equity will use its extraordinary powers to prevent an unconscionable forfeiture, it will not give aid to one whose conduct is unconscionable or unclean. Cochran v. Burdick, 1937, 67 App.D.C. 87, 89 F.2d 831.

The threshhold burden of the appellant in this court, therefore, was to establish his right to extraordinary equitable relief by showing that he came into court with "clean hands." This is purely a fact and credibility issue and appellant here was confronted with explicit findings of the trial court that he had *not* acted in good faith and that he did *not* come into court with clean hands. Having failed even to challenge, let alone overturn, these findings, he has not fulfilled his primary obligation to sustain an appeal.

Mr. Justice Black restated the duties of an appellate court *when affirmatively confronted* with issues of fact resolved by the trial court in United States v. Johnson, 1946, 327 U.S. 106, 113, 66 S. Ct. 464, 467, 90 L.Ed. 562:

"One of the most effective methods of preventing this abuse [delaying enforcement of judgments by appeals] is for appellate courts to refrain from reviewing findings of fact which have evidence to support them. * * *

"* * * the Circuit Court of Appeals here after studying the issues raised, and upon determining that the only objection was to the trial court's findings on conflicting evidence, should have decided that this does not present a reviewable

---

1. In his letter threatening such action, appellant stated: "I shall seek an injunction against any attempted foreclosure, and also damages against any meddling in this property. Apparently the note holder is not fully informed of how involved he might get in fighting with me over the $14.50 [*sic*] additional a month that [holder's attorney] is claiming I should be making. It is liable to cost him several hundred dollars in legal fees and court expenses and waste his and everybody else's time."

issue of law and *on its own motion have dismissed the appeal as frivolous."* (Emphasis added.)

It follows that where the appellant fails even to attack the findings he must overthrow in order to succeed on appeal, his appeal is manifestly frivolous.

As a consequence of his delaying tactics, appellant has been able to keep possession of the property and deny appellee the use and rents for a long period. When the judicial process is exploited in bad faith for private gain, our action should be to dismiss the appeal as frivolous and not in good faith, as "the most effective methods of preventing this abuse," and as a rebuke to litigants and members of the bar responsible for the "abuse."