# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number:_____**

**Filing Date: February 11, 2016**

**NO. S-1-SC-35460**

**IN THE MATTER OF**
**ARMANDO TORRES, ESQUIRE**

**An Attorney Licensed to**
**Practice Before the Courts**
**of the State of New Mexico**

## OPINION AND PUBLIC CENSURE

Jane Gagne
Albuquerque, NM

for Disciplinary Board

Armando Torres
Albuquerque, NM

Respondent

## OPINION AND PUBLIC CENSURE

**CHÁVEZ, Justice.**

{1}     This opinion and public censure concerns an attorney whose neglect resulted in the dismissal of his client's personal injury case for failure to prosecute and the attorney's subsequent efforts to make his client whole through deception. During the disciplinary proceedings it was also discovered that the attorney violated Rule 16-104(C) NMRA by failing to notify his client that his liability insurance had lapsed during his representation of her.

{2}     Armando Torres has practiced law since October 1977. The vast majority of his practice has been in criminal defense work under contract with the Law Office of the Public Defender. Some time around January 2009, Torres was hired by Annie Garcia to pursue a personal injury case against Wal-Mart as a result of injuries that she suffered on December 18, 2008. Torres did not file a lawsuit against Wal-Mart until January 30, 2011. The scant record before us does not reveal what, if any, work Torres did on the case either prior to or after filing the lawsuit. We presume that Torres obtained Ms. Garcia's medical records and medical bills because disciplinary counsel filed a summary of the medical records and medical bills.[1]

---

[1]We assume that the medical records and medical bills were in files obtained from Torres because the disciplinary cost bill does not seek reimbursement for obtaining records from the various medical providers who treated Ms. Garcia.

{3} According to the summary Ms. Garcia sustained a hematoma to the head, without a concussion; bruising to the knee and pelvis, without fractures; and the loss of a tooth from her dentures when a box fell off a shelf, knocking her to the ground. The medical bills were summarized as follows:

| | |
|---|---|
| Ambulance | $ 650.56 |
| Walker attachments | 29.33 |
| Lovelace charges | 6,897.00 |
| Denture replacement | 650.00 |
| Various doctor visits | 2,218.00 |
| TOTAL: | $10,804.63 |

{4} We do not know whether this medical information was ever conveyed to Wal-Mart or if Wal-Mart was even aware of the lawsuit. In any event, the lawsuit was dismissed for failure to prosecute on May 28, 2013. Despite the dismissal, in June 2014 Torres advised Ms. Garcia through her daughter, Linda Marquez, who had a power of attorney to act for Ms. Garcia, that he was negotiating a settlement of the case with Wal-Mart for $70,000. Torres was advised to continue the negotiations and seek $120,000 if it was possible; otherwise he was authorized to accept $70,000.

{5} Ms. Garcia filed a complaint against Torres in August 2014 with the Disciplinary Board, alleging that Torres was not communicating with them about the status of their case. Torres responded to the complaint on September 3, 2014 by advising the Disciplinary Board that he had finalized a settlement for Ms. Garcia with

2

Wal-Mart, but that he had not been in contact with his client due to personal circumstances. Indeed, on September 10, 2014, Torres had Ms. Garcia sign a release ostensibly settling her lawsuit with Wal-Mart for $70,000. Torres gave Ms. Garcia $50,000[2] from his personal retirement funds, not from the non-existent settlement with Wal-Mart. Torres felt remorse for what he described as "abberant [sic] behavior," but he did not "have the courage" to tell either Ms. Garcia or the Disciplinary Board that her case had been dismissed, so he set out to attempt to make her whole by fabricating a settlement with Wal-Mart.

{6}     Disciplinary counsel met with Torres after they became aware of the actual facts of the case. Torres expressed genuine remorse and agreed to enter into a conditional agreement admitting the allegations and consenting to discipline. In addition to admitting the facts described above, Torres admitted in the agreement that he had violated the following Rules of Professional Conduct:

1.    Rule 16-101 [NMRA], by failing to provide competent representation to a client;

2.    Rule 16-103 [NMRA], by failing to represent his client diligently;

3.    Rule 16-104 [NMRA,] by failing to communicate with his client

---

[2]Torres testified that the fee agreement with Ms. Garcia was for one-third of any recovery plus gross receipts tax. Under such a structure Ms. Garcia would have received less than $50,000 from a $70,000 settlement.

3

and by making false statements to his client about the status of her case;

4.    Rule 16-302 [NMRA], by failing to expedite litigation;

5.    Rule 16-801(A) [NMRA], by knowingly making a false statement of material fact in connection with a disciplinary matter; and

6.    Rule 16-804(C) [NMRA], by engaging in conduct involving dishonesty, fraud, deceit or misrepresentation.

{7}    Torres also agreed that his discipline should be a one-year suspension from the practice of law pursuant to Rule 17-206(A)(3) NMRA, deferred on the condition that he pay the costs of these proceedings and otherwise comply with the Rules of Professional Conduct, and that he receive a public censure pursuant to Rule 17-206(A)(4).   Both the hearing committee and the Disciplinary Board ultimately recommended that this Court accept the agreement.  After considering the record in this case and the arguments before the Court, we unanimously agreed to adopt the Disciplinary Board's findings of fact, conclusions of law, and recommended discipline.

{8}    Although Torres's intentional deception is troublesome, we are persuaded that the discipline that has been agreed to and recommended by the Disciplinary Board is sufficient for the future protection of the public.  *See In re Neundorf*, 1989-NMSC-052, ¶ 7, 108 N.M. 653, 777 P.2d 381 (attorney discipline "must rest

4

solely upon the steps necessary to insure the future protection of the public, the reputation of the profession, and the orderly administration of justice"). Torres's neglect of his client was an isolated incidence of negligence and lack of diligence which ordinarily would warrant an admonition. *See ABA Standards for Imposing Lawyer Sanctions* § 4.43 (1991). Torres has not had any prior disciplinary complaints filed against him, which is a significant mitigating factor. *ABA Standards for Imposing Lawyer Sanctions* § 9.32(a) (1991).

{9}     We are also persuaded that Torres's efforts to make his client whole by paying her slightly more than what she would have received had the settlement actually been with Wal-Mart for $70,000 warrants less than an outright suspension from the practice of law for his intentional misrepresentations to his client and the Disciplinary Board. Whether the client has actually been made whole is not an issue for us to decide, and in any event, we cannot decide the issue on the record before us. Much depends on the underlying merits of Ms. Garcia's case against Wal-Mart. As we stated in *Encinias v. Whitener Law Firm, P.A.*, 2013-NMSC-045, ¶ 8, 310 P.3d 611:

> Under New Mexico law, the plaintiff in a legal malpractice suit must prove this loss by demonstrating by a preponderance of the evidence that he or she would have prevailed on the underlying claim. *Richardson v. Glass*, 1992-NMSC-046, ¶ 10, 114 N.M. 119, 835 P.2d 835 ("Plaintiff had the burden of not only proving her counsel's negligence, but also that she would have recovered at trial in the underlying action.");

5

*George v. Caton*, 1979-NMCA-028, ¶¶ 46-47, 93 N.M. 370, 600 P.2d 822 ("In a malpractice action . . . the measure of damages is the value of the lost claims, i.e., the amount that would have been recovered by the client except for the attorney's negligence.").

(Omission in original.)

{10} In this case, Torres did not seek a release of his potential liability from Ms. Garcia, and therefore Ms. Garcia may not be barred from pursuing a lawyer negligence claim against Torres. Indeed, had Torres sought to settle with Ms. Garcia for his malpractice, he would have had to comply with Rule 16-108(H) NMRA, which provides:

> H. **Prospective malpractice liability limitation.** A lawyer shall not:
>
> (1) make an agreement prospectively limiting the lawyer's liability to a client for malpractice unless the client is independently represented in making the agreement; or
>
> (2) settle a claim or potential claim for such liability with an unrepresented client or former client unless that person is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel in connection therewith.

{11} However, the method Torres chose to resolve the dispute was deceptive. Torres should have advised Ms. Garcia in writing that her case had been dismissed and that she should seek independent counsel regarding a potential malpractice claim

6

against him. Ordinarily the attorney faced with a potential malpractice claim would notify his insurance carrier. However, in this case Torres testified that the malpractice insurance he had at the time he was employed by Ms. Garcia had lapsed, yet he did not notify Ms. Garcia that he was no longer insured, as required by Rule 16-104(C). We take this opportunity to quote Rule 16-104(C) in its entirety to emphasize that this disclosure requirement is mandatory and will subject attorneys to discipline for non-compliance.

C. **Disclosure of professional liability insurance.**

(1) If, at the time of the client's formal engagement of a lawyer, the lawyer does not have a professional liability insurance policy with limits of at least one-hundred thousand dollars ($100,000) per claim and three-hundred thousand dollars ($300,000) in the aggregate, the lawyer shall inform the client in writing using the form of notice prescribed by this rule. If during the course of representation, an insurance policy in effect at the time of the client's engagement of the lawyer lapses, or is terminated, the lawyer shall provide notice to the client using the form prescribed by this rule.

(2) The form of notice and acknowledgment required under this Paragraph shall be:

NOTICE TO CLIENT

Pursuant to Rule 16-104(C) NMRA of the New Mexico Rules of Professional Conduct, I am required to notify you that ["I" or "this Firm"] [do not][does not][no longer] maintain[s] professional liability malpractice insurance of at least one-hundred thousand dollars ($100,000) per occurrence and three-hundred thousand dollars

7

($300,000) in the aggregate.

_____

Attorney's signature

CLIENT ACKNOWLEDGMENT

I acknowledge receipt of the notice required by Rule 16-104(C) NMRA of the New Mexico Rules of Professional Conduct that [insert attorney or firm's name] does not maintain professional liability malpractice insurance of at least one-hundred thousand dollars ($100,000) per occurrence and three-hundred thousand dollars ($300,000) in the aggregate.

_____

Client's signature

(3)	As used in this Paragraph, "lawyer" includes a lawyer provisionally admitted under Rule 24-106 NMRA and Rules 26-101 through 26-106 NMRA; however it does not include a lawyer who is a full-time judge, in-house corporate counsel for a single corporate entity, or a lawyer who practices exclusively as an employee of a governmental agency.

(4)	A lawyer shall maintain a record of the disclosures made pursuant to this rule for six (6) years after termination of the representation of the client by the lawyer.

(5)	The minimum limits of insurance specified by this rule include any deductible or self-insured retention, which must be paid as a precondition to the payment of the coverage available under the professional liability insurance policy.

(6)	A lawyer is in violation of this rule if the lawyer or the firm employing the lawyer maintain a professional liability policy with a deductible or self-insured retention that the lawyer knows or has

8

> reason to know cannot be paid by the lawyer or the lawyer's firm in the event of a loss.

*Id.*

{12} During oral argument, disciplinary counsel contended that this case is comparable to *Neundorf* and justifies a public censure. We agree. In *Neundorf*, attorney John Neundorf allowed the statute of limitations to run on a client's claim by filing the lawsuit one day late. 1989-NMSC-052, ¶ 3. Neundorf wrote to the insurance adjuster on the case, enclosing an unconfirmed copy of the complaint and representing that it had been timely filed. When the adjuster asked for a confirmed copy, Neundorf used a copy machine to superimpose a filing stamp from an unrelated complaint that would have shown that the complaint was filed within the statute of limitations. *Id.* Neundorf also showed a copy of the altered complaint to his client to assure her that it was timely filed. *Id.* Neundorf then made a settlement offer to the insurance company, and after the insurance company made a counteroffer for half of the demand, he urged his client to accept the counteroffer, even offering to lower his fee to entice his client to accept. *Id.* ¶ 4. The client became concerned about the case, and she retrieved a copy of the complaint from the district court. *Id.* When she discovered that the complaint had been filed late, she consulted another attorney. *Id.* ¶¶ 4-5. The new attorney and the attorney for the insurance company notified the

9

Disciplinary Board of Neundorf's actions, and the Disciplinary Board brought disciplinary proceedings against him. *Id.* The hearing committee found that had the client not discovered the alteration and brought it to another attorney's attention, Neundorf would have continued his fraudulent efforts to settle the claim. *Id.* ¶ 5. The hearing committee also found that had the negotiations resulted in a settlement, the alteration would not have been discovered and Neundorf would not have acknowledged any wrongdoing. *Id.* The hearing committee recommended that he be suspended from the practice of law for six months and placed on probation for an additional six months as discipline. *Id.* ¶ 6.

{13} After oral argument, a Disciplinary Board panel adopted all of the hearing committee's findings and conclusions, but recommended that Neundorf receive a public censure and be placed on conditional probation for a period of one year. *Id.* The Board noted that Neundorf made a substantial effort to reimburse his client for her losses by agreeing to pay her $35,000 over a period of two years, and had already paid $14,500 toward that debt. *Id.* The Board also found that Neundorf had shown honest remorse, and there was no danger that his misconduct would be repeated. *Id.*

{14} Both Neundorf and Torres were experienced attorneys who had not previously had disciplinary complaints filed against them. They each engaged in an isolated

incident of attorney negligence, and ultimately attempted to make their clients whole. Both attorneys demonstrated sincere remorse for their actions. Where both attorneys failed miserably is in their efforts to remedy their negligence by deception. We are persuaded by the record in this case that a one-year deferred suspension with this public censure is adequate to protect the public. Therefore, attorney Armando Torres is hereby suspended from the practice of law until December 2, 2016, with the suspension deferred subject to the conditions expressed in our order dated December 2, 2015. This opinion shall serve as Torres's public censure, and he shall pay costs in the amount of $415.27 to the Disciplinary Board consistent with our order.

{15}    **IT IS SO ORDERED.**


_____
**EDWARD L. CHÁVEZ, Justice**

**WE CONCUR:**


_____
**BARBARA J. VIGIL, Chief Justice**


_____
**PETRA JIMENEZ MAES, Justice**

11