This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-36741

**MARY K. HILLEY,**

Plaintiff-Appellant,

v.

**MICHAEL CADIGAN, an individual,**
**CADIGAN LAW FIRM PC,**
**a New Mexico corporation,**

Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Beatrice Brickhouse, District Judge**

Mary K. Hilley
Albuquerque, NM

Pro Se Appellant

Sheehan & Sheehan, P.A.
Joshua A. Allison
Briggs F. Cheney
Albuquerque, NM

for Appellees

## MEMORANDUM OPINION

**VANZI, Judge.**

**{1}** Plaintiff Mary Hilley appeals the district court's grant of summary judgment in favor of Defendants Michael Cadigan and Cadigan Law Firm, P.C. (Defendants), on Plaintiff's claims for legal malpractice, breach of contract, negligent misrepresentation, fraud, and violations of the Unfair Practices Act (UPA), NMSA 1978, Section 57-12-2(D)(17), (E) (2009, amended 2019). Plaintiff argues that the district court should not

have granted summary judgment on her malpractice claims against Defendants because (1) the district court erred, and violated Plaintiff's constitutional rights, by refusing to allow testimony from Plaintiff's proffered expert, Mary Kay Root, at the summary judgment hearing, and/or in refusing to consider Ms. Root's affidavit; (2) the law of the case doctrine precluded the grant of summary judgment; (3) no expert testimony was required to create a material issue of fact regarding Defendants' alleged breach of the standard of care, or the affidavit of Dennis Downey, D.D.S. was sufficient to create a material issue as to such breach; and (4) the district court failed to consider the whole record. Plaintiff further argues that the district court erred in granting summary judgment on her fraud and misrepresentation claims against Defendants because there were genuine issues of material fact, and because, again, the district court failed to consider the whole record. Finally, Plaintiff argues that the district court erred in refusing to grant Plaintiff's requests to audio-record all hearings. Unpersuaded by any of Plaintiff's arguments, we affirm.

## BACKGROUND

### Undisputed Material Facts

**{2}** Rule 1-056(D)(2) NMRA requires that the memorandum in opposition to a motion for summary judgment "shall contain a concise statement of the material facts as to which the party contends a genuine issue does exist. Each fact in dispute shall be numbered, shall refer with particularity to those portions of the record upon which the opposing party relies, and shall state the number of the moving party's fact that is disputed." Rule 1-056(E) also requires that the response, "by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."

**{3}** In her responses to Defendants' two motions for summary judgment, Plaintiff failed to comply with the requirements of Rule 1-056(D)(2) and (E), but instead argued about the legal significance of the facts as she understood them, and attached affidavits, without explaining how specific facts set out in the affidavits create a genuine issue for trial. While we appreciate that Plaintiff, as a pro se litigant, has no formal legal training, neither the district court nor this Court are required to sift through Plaintiff's responses to attempt to discern which, if any, of the material facts presented in Defendants' motions are allegedly disputed by Plaintiff. *Clayton v. Trotter*, 1990-NMCA-078, ¶ 12, 110 N.M. 369, 796 P.2d 262 ("[A] pro se litigant is bound by all of the rules applicable to litigants represented by attorneys."); *see In re Estate of Heeter*, 1992-NMCA-032, ¶ 15, 113 N.M. 691, 831 P.2d 990 (holding that "[t]his court will not search the record to find evidence to support an appellant's claims"). Rule 1-056(D)(2) provides that "[a]ll material facts set forth in the statement of the moving party shall be deemed admitted unless specifically controverted." *See Valenzuela v. Snyder*, 2014-NMCA-061, ¶ 11, 326 P.3d 1120 (holding that, given the non-moving party's noncompliance with Rule 1-056 requirements, the undisputed material facts asserted in the summary judgment motion were appropriately deemed admitted by the district court). Accordingly,

we, like the district court, consider the following facts, properly set forth in Defendants' motions, to be undisputed.

**{4}** Plaintiff is a licensed dental hygienist, who was hired by Greg LoPour, D.D.S., in or around May 2011. As part of her employment, Plaintiff administered local anesthesia to patients. On August 11, 2011, the New Mexico Board of Dental Health Care's Dental Hygienist Committee (Committee), sent Plaintiff a letter stating that Plaintiff's licensing file "[does] not include any supporting documentation that [you have] ever applied for or [have] ever been issued a Local Anesthesia Permit in New Mexico."[1] It further stated that, when the Committee met in July 2011, "the Committee voted to refer Plaintiff's case to the Attorney General's Office for the issuance of a Notice of Contemplated Action (NCA) for the violation of" NMSA 1978, Section 61-5A-21(A)(5), (7) (2003, amended 2019);[2] NMSA 1978, § 61-5A-4(D) (2011);[3] 16.5.28(8), (9), (10) NMAC[4] and 16.5.30.10(B)(10) NMAC[5] "with proposed early resolution that [Plaintiff] accept and comply with a '[c]ease & [d]esist' from administering local anesthesia until you are properly certified." The cited laws and regulations were attached to the letter.

**{5}** On August 18, 2011, Plaintiff emailed Defendants, who was already representing Plaintiff in a separate real estate matter, explaining the situation with the Board and indicating that she was "already certified," but that she could not locate a copy of the certificate. Plaintiff stated that she had sent the Board proof of the requisite coursework and proof of her licensure to administer anesthesia in other states. Plaintiff said that she could "redo" the certification, but that she had followed everything the Board Administrator asked her to do, and lamented that "I can't work for my boss because of this clerical error." Plaintiff stated that this was "distressing to say the least" and asked Defendants "Do I need an attorney for this?" Defendants responded to Plaintiff's email on August 19, 2011, stating: "To answer your question, you must have a lawyer take care of this." Defendants noted that Plaintiff still had a "few thousand dollars in the trust account" from the real estate matter, and offered that "[i]f it is [ok] with you, I will use that money to pay the fees in this matter." Defendant asked Plaintiff if she was currently

---

1For context, it appears from the amended complaint that Plaintiff had requested copies of her licensing materials from the Committee, prompting the Committee's response.

2 Providing, in relevant part, that "the board and, as relates to dental hygienist licensure, [C]ommittee may fine and may deny, revoke, suspend, stipulate or otherwise limit any license or certificate . . . upon findings by the board or the [C]ommittee that the licensee, certificate holder or applicant: . . . (5) is guilty of unprofessional conduct as defined by [this] rule; . . . (7) has violated any provisions of the Dental Health Care Act or rule or relation of the board or, as relates to the practice of dental hygiene, the [C]ommittee[.]"

3Providing that "[i]n addition to performing dental hygiene as defined in Subsection B of this section, dental hygienists who have met the criteria as the committee shall establish and the board shall ratify may administer local anesthesia under indirect supervision of a dentist."

4Providing, in relevant part, that "[l]ocal anesthesia administration is not included as a function of dental hygiene licensure; it may only be performed by dental hygienists who have been separately certified by the [C]ommittee to perform the expanded function." Regulation 16.5.28.9 NMAC sets forth the necessary qualifications and documentation for certification by curriculum or exam, and Regulation 16.5.28.10 NMAC sets forth the necessary qualifications and documentation for certification by credentials.

5Defining "[u]nprofessional conduct" as including, but not limited to "injudicious administration of any drug or medicine[.]"

working, and advised that "[t]he [B]oard has not yet issued a '[c]ease and [d]esist' so you should be able to work." He indicated that he would get a letter out to the Board that day.

{6}     Plaintiff replied, "Great, that will help." Plaintiff also explained in further detail her background, and how she believed she had previously become certified in New Mexico. Defendant responded, and asked: "Do I understand that you can take a short class and get the anesthesia certificate? That might be the path of least resistance to pursue in the meantime." Plaintiff replied, "Another class?" and noted that she believed the class was not being offered for six months. Plaintiff stated: "I'll do it if I have to, BUT they should have some accountability for the error and hassle I am having to go through. Also the loss of income."

{7}     Defendants sent two letters to the Board on August 19, 2011. The first one indicated that Defendants' firm was representing Plaintiff, noting that no "[c]ease and [d]esist" order was included in the Committee's letter, and that Plaintiff had heard nothing from the Attorney General's Office. Defendants cited Plaintiff's current licensure as a dental hygienist, stating that "[u]ntil and unless the Board takes proper administrative action to suspend her license she will continue to practice. [Plaintiff is] not in a financial position to stop working." He further noted that Plaintiff previously submitted all required paperwork relating to her anesthesia certificate, and suggested that the Board search for her records under her former last name. The second letter attached copies of documents (also submitted by Plaintiff in an earlier letter) demonstrating that Plaintiff had previously applied for the requisite credentials for the administration of anesthesia. Plaintiff continued searching for her anesthesia certificate, but could not find it.

{8}     On January 13, 2012, Defendants spoke with Assistant Attorney General Gloria Lucero, and sent her an email attaching Plaintiff's licensing file, including copies of Plaintiff's licenses to administer anesthesia in California, Colorado, and Utah and proof that she applied for the anesthesia certificate in New Mexico. He asked that Ms. Lucero discuss Plaintiff's situation with the Board staff, to see if they might avoid a "compliance action," and get back to him.

{9}     Meanwhile, also on January 13, 2012, Plaintiff notified Defendants via email that she had registered to take the local anesthetic course at the end of January. Plaintiff completed the course, and the Western Regional Examining Board (WREB) licensing examination, and was notified she passed on March 2, 2012. Around this same time on February 28, 2012, Defendants terminated their representation of Plaintiff, because Plaintiff accused Defendants of having a conflict of interest. In the letter of termination, Defendants further stated that he considered the legal matters in which he was representing her to be complete, and that "[i]t appears that the Dental Board will not take licensing action against you, based, at least in part, on my correspondence with the attorney for the Dental Board. I am glad that you chose to take the classes necessary to avoid a costly dispute with the Dental Board." Defendants noted that, since the costs in the real estate matter totaled $9,775.10, only $224.90 remained in Plaintiff's trust

account with the firm. Defendants told Plaintiff that he would accept that amount as payment in full on the Dental Board matter, "although it is much less than would be owed under my typical hourly rate." Defendants and his firm received no more than $224.90 in payment for services on the Dental Board matter. No NCA action was issued against Plaintiff. On February 12, 2013, Plaintiff was notified that the Board had granted her application for a local anesthesia permit.

{10}    Following the commencement of litigation in this case (and in support of their summary judgment motions) Defendants filed the affidavit of Mary Emily ("Molly") Schmidt-Nowara, Esq., who offered expert opinions on Defendants' professional conduct in Plaintiff's Dental Board matter. Ms. Nowara, an attorney who regularly represents individuals and entities in an array of licensing Board proceedings in New Mexico, stated in her affidavit that, in her opinion, Defendants' handling of Plaintiff's Board case from August 2011 to February 2012 was consistent with the standard of care for lawyers practicing in New Mexico at the time. Specifically, she stated that it was appropriate for Defendants to advise Plaintiff to retain counsel in response to the August 11, 2011 letter from the Board, because, in her extensive experience, licensees have a much greater chance of success in disciplinary matters if they are represented by counsel, and boards are accustomed to such representation. Ms. Nowara further opined that Defendants' August 18, 2011, communication with the Board was timely, appropriate, informative, professional, represented good advocacy, and was addressed to the issues presented. Ms. Nowara opined that Defendants' advice was correct, and not tantamount to advising Plaintiff to break the law. According to Ms. Nowara, Defendants' reliance on Plaintiff's representations about her certification was reasonable, particularly given that licensees have their own professional and ethical duties and are obligated to understand the requirements of licensure. Moreover, it was reasonable for Defendants to interpret the Board's August 11, 2011, letter as one which did *not* constitute a "cease and desist" request in itself, but instead advised that an NCA and proposed settlement, including a cease and desist provision, would be forthcoming. Ms. Nowara noted that she did not see Defendants' actions as neglect of Plaintiff's case, but rather that, by not demanding that Plaintiff's matter be placed on the Dental Board's agenda, he provided Plaintiff with the opportunity to either locate or replace her certification while avoiding the issuance of an NCA. Of further significance to Ms. Nowara was the fact that Defendants advised Plaintiff as early as September 2011 that she should consider retaking the necessary coursework to expedite the certification process and address the Board's concerns in a proactive way, but that Plaintiff did not pursue this option until January 2012. Finally, Ms. Nowara opined that Defendants did not abandon Plaintiff or prejudice her case before the Board by terminating their representation in February 2012, because no NCA had been issued and there was no pending disciplinary action.

**Procedural History**

{11}    Plaintiff, appearing pro se, initiated this action against Defendants on December 15, 2014. Plaintiff's original complaint included claims for breach of fiduciary duty, ineffective assistance of counsel, negligence, intentional misconduct, non-performance,

breach of contract, abandonment, and malpractice. Defendants filed a motion to dismiss Plaintiff's claims of ineffective assistance of counsel, intentional misconduct, non-performance and abandonment, as failing to state cognizable claims. On June 9, 2015, Defendants also filed a motion for summary judgment, seeking dismissal of Plaintiff's malpractice, breach of contract and breach of fiduciary duty claims for lack of causation. On the date of the hearing on the foregoing motions, Plaintiff filed a motion for leave to amend the complaint. The district court granted Defendants' motion to dismiss. However, on February 17, 2016, the court denied Defendants' motion for summary judgment, finding that Plaintiff's response was "sufficient to raise questions of fact as to whether Defendants' representation of Plaintiff before the Dental Board caused Plaintiff any damage as alleged." The court also granted Plaintiff leave to file the proposed amended complaint with claims for breach of contract, intentional misrepresentation and fraud, negligent misrepresentation, and unfair and deceptive trade practices and malpractice. Plaintiff filed her amended complaint on March 16, 2016.

**{12}** A scheduling order was entered on November 10, 2016, setting trial for October 2017, and establishing a number of deadlines. According to the scheduling order, Plaintiff's expert witness disclosures were due January 13, 2017, and Defendants' were due on February 13, 2017. Consistent with Rule 1-026(B)(6)(a) NMRA, disclosures were to include, among other things, the subject matter on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion. Discovery was scheduled to conclude on August 16, 2017, and dispositive motions were required to be filed by August 30, 2017. The conclusion of the Scheduling Order states that "[a] motion and order are required for any modification of this [o]rder."

**{13}** Plaintiff filed an expert disclosure on January 9, 2017, listing five experts, including (as relevant here) Scott Fuqua, to testify regarding "procedures at the [New Mexico] R[egulation] L[icensing] D[epartment]" (RLD), "the standard of care for an attorney handling a licensing dispute, licensing law, specific matters related to [Plaintiff's] case and [Defendants] handling of the license matter." Plaintiff also disclosed Mary Kay Root, of the RLD, Boards and Commissions Division, to testify "about [Defendants'] actions on behalf of [Plaintiff] during her licensing situation" and "other matters related to licensing disputes." Plaintiff provided the addresses for these individuals, but no other information.

**{14}** On January 31, 2017, Plaintiff filed an amended disclosure, providing no new information regarding Mr. Fuqua, except that he was "reconsidering his willingness to be [an] expert witness," and that he had been an expert witness before. Plaintiff also stated that she would "supplement information at a later date regarding his qualifications." Ms. Root was removed from the disclosure. Defendants filed their expert witness disclosure on February 13, 2017, identifying Ms. Nowara as an expert who would opine on "whether Defendants' representation of Plaintiff in connection with Plaintiff['s] letter from the . . . Dental Board . . . was consistent with the standard of care for lawyers practicing in New Mexico" at the time. The disclosure attached a CV and an affidavit setting forth Ms. Nowara's opinions and the facts and grounds in support.

**{15}** On June 20, 2017, Defendants filed two motions: one for summary judgment on Plaintiff's malpractice claims and negligent misrepresentation claim (Counts 1, 3, and 5), and one for summary judgment on Plaintiff's fraud and UPA claims (Counts 2 and 4). Defendants argued that Plaintiff lacked any expert opinion evidence that Defendants' conduct breached the standard of care and was therefore unable to prove one of the elements of her professional negligence counts (Counts 1 and 5). Defendants further argued that Plaintiff's fraud and misrepresentation claims fail, because the undisputed facts show no misrepresentations to Plaintiff, and/or show no intent to deceive Plaintiff. On July 5, 2017, Plaintiff filed opposition briefs, not specifically controverting any of Defendants' list of undisputed material facts (as discussed hereinabove), but attaching affidavits from Plaintiff and several lay witnesses, and a dentist, Dr. Downey.

**{16}** Simultaneously, Plaintiff filed a second amended expert witness list, adding (again) Ms. Root, and removing Mr. Fuqua. This time, Plaintiff indicated (for the first time) that she intended to offer Ms. Root's testimony at the summary judgment hearing, stating that "[Ms. Root] is expected to testify that [Defendants] breached [their] duty to [Plaintiff] by failing to convey to [Plaintiff] or otherwise pursue the method of resolution which [Ms. Root] informed him of.[6] [Ms. Root] is also expected to testify that [Defendants] hindered the resolution of [Plaintiff's] case, and that [Plaintiff] would have been better off if [Defendants] had never represented [her.]" Plaintiff added that "I cannot say with any exactness what the full scope of [Ms. Root's] testimony will be[.]" Defendants filed a motion to strike Plaintiff's expert witness lists and to exclude the expert testimony of Ms. Root, citing Plaintiff's willful failure to follow the requirements of the scheduling order or to request a modification of the order, and her proffer of undisclosed expert testimony "on the eve of the hearing" on Defendants' motions. Defendants argued that the district court should grant the motions both pursuant to its inherent authority, and as a discovery sanction. Plaintiff filed a response arguing that the district court should permit Ms. Root to testify because Plaintiff's expert disclosures were adequate, Defendants would not be prejudiced by Ms. Root's testimony, and the August 3, 2017 hearing, was before the close of discovery. On July 18, 2017, Plaintiff filed a third amended expert witness list, this time attaching Ms. Root's CV.

**{17}** At the summary judgment hearing on August 3, 2017, with respect to Plaintiff's request to allow Ms. Root to testify, the district court found that the request was untimely, because Plaintiff failed to include, in her written responses to the motions, an affidavit setting forth the opinions of Ms. Root, citing Rule 1-056(D) and (E). The court also found that Plaintiff failed to timely and fully disclose Ms. Root as an expert witness as required in the scheduling order and in response to Defendants' discovery requests. For the same reasons, the district court did not consider the affidavit of Ms. Root. The district court found that Plaintiff failed to controvert, with affidavits or other admissible evidence, the undisputed material facts set forth in Defendants' motions. The court

---

6Plaintiff had also disclosed Ms. Root as a fact witness in her capacity as the acting director of the Boards and Commissions Division, because Ms. Root had at some point spoken with Defendant Cadigan, and had advised him that anyone denied a license or permit could request to be placed on the agenda of a licensing Committee's next meeting.

therefore deemed those facts admitted, granted Defendants' motions, and dismissed Plaintiff's complaint with prejudice. This appeal followed.

**Discussion**

**Standard of Review**

**{18}** We first consider the district court's exclusion of Plaintiff's proffered expert testimony and affidavit, which we review for an abuse of discretion. *Marquez v. Gomez*, 1991-NMCA-066, ¶ 20, 116 N.M. 626, 866 P.2d 354 (reviewing under an abuse of discretion standard the district court's exclusion of oral testimony and affidavit evidence in a hearing on the defendants' motion for summary judgment); *see Allred v. N.M. Dep't of Transportation*, 2017-NMCA-019, ¶ 51, 388 P.3d 998 (holding that Rule 1-037(B) NMRA bestows on the district court authority to grant and enforce sanctions for discovery violations, and reviewing for an abuse of discretion the district court's sanction excluding of the testimony of an expert witness who had not been properly disclosed). An abuse of discretion occurs when the trial court's ruling is against the facts, logic, and circumstances of the case or is untenable or unjustified by reason. *See State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829.

**{19}** Next, we review de novo the district court's grant of summary judgment in favor of Defendants. *See Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. We ordinarily review the entire record "in [the] light most favorable to the party opposing summary judgment and draw all reasonable inferences in support of a trial on the merits." *Romero v. Philip Morris Inc.*, 2010-NMSC-035, ¶ 7, 148 N.M. 713, 242 P.3d 280. "However, if no material issues of fact are in dispute and an appeal presents only a question of law, we apply de novo review and are not required to view the appeal in the light most favorable to the party opposing summary judgment." *City of Albuquerque v. BPLW Architects & Eng'rs, Inc.*, 2009-NMCA-081, ¶ 7, 146 N.M. 717, 213 P.3d 1146.

**{20}** "Summary judgment is appropriate when a defendant negates an essential element of the plaintiff's case by demonstrating the absence of an issue of [material] fact regarding that element." *Mayfield Smithson Enters. v. Com-Quip, Inc.*, 1995-NMSC-034, ¶ 22, 120 N.M. 9, 896 P.2d 1156. "A defendant seeking summary judgment . . . bears the initial burden of negating at least one of the essential elements upon which the plaintiff's claims are grounded." *Blauwkamp v. Univ. of N.M. Hosp.*, 1992-NMCA-048, ¶ 14, 114 N.M. 228, 836 P.2d 1249. Once the defendant has made a prima facie case, the non-movant has the burden of establishing the existence of a genuine issue of material fact relevant to any element negated by the movant. *See Bartlett v. Mirabal*, 2000-NMCA-036, ¶ 17, 128 N.M. 830, 999 P.2d 1062; *see also Romero*, 2010-NMSC-035, ¶ 10. "[S]ummary judgment should not be granted when material issues of fact remain or when the facts are insufficiently developed for determination of the central issues involved." *Bartlett*, 2000-NMCA-036, ¶ 17 (internal quotation marks and citation omitted). However, the non-movant may not rely on allegations or speculation, but must come forward with admissible evidence demonstrating a genuine issue requiring trial

and demonstrating that the facts allegedly in dispute are material to the claims at issue. Rule 1-056(E); *Romero*, 2010-NMSC-035, ¶ 11 (holding that materiality is determined by the governing substantive law, such that a fact is material if it is necessary to give rise to a claim). In short, "the party opposing the summary judgment motion must adduce evidence to justify a trial on the issues." *Romero*, 2010-NMSC-035, ¶ 10 (alteration, internal quotation marks, and citation omitted).

## A. The District Court's Exclusion of Plaintiff's Proffered Expert Witness Testimony and Affidavit Was Not Improper

### 1. The District Court Did Not Abuse Its Discretion

**{21}** Plaintiff argues that the district court erred in refusing to allow Ms. Root to testify in the summary judgment hearing, because Rule 1-043(C) NMRA, permits evidence to be presented through oral testimony in motion hearings, and thus "the [d]istrict [c]ourt's conclusion that Rule 1-056 prohibited oral testimony was erroneous." When a motion for summary judgment is made and supported by affidavits and other admissible evidence, "an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Rule 1-056(E). Moreover, "[b]ecause Rule 1-056 is silent concerning the use of oral testimony to support or oppose motions for summary judgment . . . it is clear that such practice is to be used, if at all, only upon a proper showing that the party seeking to offer such testimony has first exercised due diligence in attempting to secure affidavits or deposition testimony . . . and that for reasons beyond his control has been unable to obtain [them]." *Marquez*, 1991-NMCA-066, ¶ 24. Thus, although Rule 1-043(C) authorizes the use of oral testimony during hearings on motions, generally, "the court should use oral testimony on a summary judgment motion sparingly and with great care." *Marquez*, 1991-NMCA-066, ¶ 23 (citing and quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2723 (4th 2019)).

**{22}** Here, the district court excluded the testimony of Ms. Root in the summary judgment hearing, reasoning that Rule 1-056(E) obligated Plaintiff to proffer Ms. Root's affidavit in opposition to Defendants' motions, which Plaintiff had failed to do. Plaintiff made no showing that she exercised due diligence to obtain an affidavit from Ms. Root, but was unable, for reasons beyond Plaintiff's control. To the contrary, the district court found that Plaintiff disregarded the requirements of the scheduling order, and failed to adequately respond to Defendants' discovery requests and requests to depose Ms. Root. Accordingly, the district court did not abuse its discretion in excluding Ms. Root's testimony. *See Marquez*, 1991-NMCA-066, ¶ 24.

**{23}** Plaintiff next argues that the district court erred in refusing to admit Ms. Root's affidavit. Specifically, Plaintiff quotes *Richards v. Upjohn Co.*, 1980-NMCA-062, ¶ 22, 95 N.M. 675, 625 P.2d 1192, for the proposition that "an affidavit submitted [on] the day of the summary judgment hearing should be allowed, unless the other party needs time to rebut the information contained in the affidavit, and there is some reason that the

hearing cannot be postponed." Similarly, in *Marquez*, we held that "[i]n the absence of a showing of prejudice" the trial court should have considered two affidavits filed on the day of the summary judgment hearing. 1991-NMCA-066, ¶ 25. But in *Marquez*, the defendants "did not argue that they were prejudiced by the matters contained in the affidavits tendered on the day of the hearing or that the information therein was not previously known to them." *Id.* Here, Plaintiff did not comply with the scheduling order or provide a substantive disclosure of Ms. Root's proffered expert opinions, and the bases for those opinions, prior to the date of the summary judgment hearing. Plaintiff spends a great deal of her brief arguing that Defendants are not prejudiced by the belated proffer of Ms. Root's affidavit, as shown by Defendants' failure to seek adjournment of the summary judgment hearing to a later date, and because discovery was not scheduled to close until the end of August 2011. But consideration of an affidavit from Ms. Root on the date of the summary judgment hearing would have precluded Defendants from responding to or rebutting Ms. Root's testimony without significantly delaying the resolution of the motions. Indeed, Defendants would have received the substance of Ms. Root's opinions for the first time more than two years after Plaintiff filed her complaint, more than seven months after the expert disclosure deadline set forth in the scheduling order, and only two months before trial. The prejudice posed to Defendants in these circumstances is apparent, and the district court did not abuse its discretion in excluding Ms. Root's affidavit from consideration on summary judgment.

**{24}**  For similar reasons, the district court's exclusion of Ms. Root's testimony and affidavit was also an appropriate discovery sanction. Rule 1-026(B)(6)(a) sets forth the expert discovery to which parties are entitled, including, inter alia, discovery of "the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion[,]" and the qualifications of the expert to give such opinions. These requirements were also set forth in the district court's scheduling order, entered November 10, 2016. Pursuant to that order, Plaintiff was to disclose the required information regarding any expert expected to testify at trial, by January 13, 2017. "A scheduling order shall not be modified except by order of the court upon a showing of good cause." Rule 1-016(B) NMRA.

**{25}**  Plaintiff argues that she disclosed Ms. Root "at the proper time[,]" but Plaintiff's initial disclosure plainly fails to meet the requirements of Rule 1-026(B)(6)(a) and the scheduling order, as it does not detail the substance of Ms. Root's expected opinion testimony or the basis for her opinion, nor does it provide her qualifications or any other information. Plaintiff's first amended expert disclosure removed Ms. Root entirely. Plaintiff did not provide substantive responses to defense counsel's expert-related discovery requests, but only referred to the prior disclosures. When she was asked, in January and February 2017, to supplement her disclosures, and to provide dates on which any experts would be available for deposition, she did not do so. Plaintiff's second and third amended expert disclosures were not filed until July 2017, after Defendants' motions for summary judgment, and these still did not adequately set forth the substance of Ms. Root's expected testimony and the bases for her opinions.

**{26}** "We will not interfere with the [district] court's enforcement of pretrial deadlines. Adherence to such scheduling orders [is] critical in maintaining the integrity of judicial proceedings." *Reaves v. Bergsrud*, 1999-NMCA-075, ¶ 28, 127 N.M. 446, 982 P.2d 497 (internal quotation marks and citation omitted). Moreover, Rule 1-037(B)(2)(b) provides that "if a party fails to obey an order under Rule 1-026 . . ., the court in which the action is pending may . . . prohibit[] that party from introducing designated matters in evidence." Accordingly, we have concluded that failure to comply with expert disclosure requirements is "sufficient grounds to exclude expert witness testimony." *Allred*, 2017-NMCA-019, ¶ 47. Plaintiff, who is "bound by all of the rules applicable to litigants represented by attorneys[,]" *Clayton*, 1990-NMCA-078, ¶ 12, was on notice of her noncompliance with the court's scheduling order and expert disclosure requirements for approximately six (6) months prior to the August 11th hearing. Six weeks before that hearing, the district court also admonished Plaintiff that a lack of expert testimony would likely be fatal to Plaintiff's claims, and reminded Plaintiff that she was in violation of the court's scheduling order with respect to expert disclosures. Plaintiff did not seek modification of the scheduling order, and did not attempt to submit an affidavit from Ms. Root until the date of the summary judgment hearing. Thus, the district court's exclusion of Ms. Root's affidavit was not "unreasonably severe," as Plaintiff argues, but well within the court's discretion.

## 2. Plaintiff's Due Process Claim on Exclusion Was Not Preserved

**{27}** Plaintiff argues that the district court denied Plaintiff her rights to procedural due process and trial by jury under Article II, Sections 12 and 18 of the New Mexico Constitution, by ruling on Defendants' motion to strike and exclude Plaintiff's experts in the summary judgment hearing, without notice to Plaintiff, and after informing the parties (at the outset of the summary judgment hearing) that the court would not be ruling on the motion. But Plaintiff did not preserve this argument. The record citations to which Plaintiff directs us are her statements to the district court in a hearing some six weeks prior to the summary judgment hearing, before Defendants' motion to strike and exclude Plaintiff's experts was even filed. "[O]n appeal, the party must specifically point out where, in the record, the party invoked the court's ruling on the issue. Absent that citation to the record or any obvious preservation, we will not consider the issue." *Crutchfield v. N.M. Dep't of Taxation & Revenue*, 2005-NMCA-022, ¶ 14, 137 N.M. 26, 106 P.3d 1273.

## B. The District Court's Grant of Summary Judgment on Plaintiff's Malpractice Claims Was Correct

## 1. The Law of the Case Doctrine Did Not Preclude Summary Judgment in Favor of Defendants

**{28}** Plaintiff argues that the district court's denial of Defendants' first motion for summary judgment became the "law of the case," such that the district court should not have granted Defendants' subsequent motion for summary judgment. Plaintiff misunderstands the law of the case doctrine.

**{29}** The law of the case doctrine prevents relitigation of issues, such that "a decision on an issue of law made at one stage of a case becomes a binding precedent in successive stages of the same litigation." *Cordova v. Larsen*, 2004-NMCA-087, ¶ 10, 136 N.M. 87, 94 P.3d 830 (internal quotation marks and citation omitted). The doctrine "is a matter of precedent and policy; it is a determination that, in the interests of the parties and judicial economy, once a particular issue in a case is settled it should remain settled." *Trujillo v. City of Albuquerque*, 1998-NMSC-031, ¶ 40, 125 N.M. 721, 965 P.2d 305 (internal quotation marks and citation omitted). The doctrine is "discretionary and flexible." *Id.* ¶ 41. "Whether law of the case applies, as well as how it applies, are questions of law subject to de novo review." *State ex rel. King v. UU Bar Ranch Ltd. P'ship*, 2009-NMSC-010, ¶ 20, 145 N.M. 769, 205 P.3d 816.

**{30}** The elements of a cause of action for legal malpractice are discrete, and require the plaintiff to prove each element, including: "(1) the employment of the defendant attorney; (2) the defendant attorney's neglect of a reasonable duty; and (3) the negligence resulted in and was the proximate cause of loss to the [plaintiff]." *Encinias v. Whitener Law Firm, P.A.*, 2013-NMSC-045, ¶ 8, 310 P.3d 611 (internal quotation marks and citation omitted); *see also* UJI 13-2401 NMRA. A defendant who moves for summary judgment has only to negate one of the essential elements of the claim. *Blauwkamp*, 1992-NMCA-048, ¶ 14. Accordingly, a litigant may address or the district court may decide the element of causation, without addressing or deciding whether the defendant breached any duty. *See, e.g.*, *Andrews v. Saylor*, 2003-NMCA-132, ¶ 19, 134 N.M. 545, 80 P.3d 482 (noting that the defendants' "motion for summary judgment was limited to the issue of proximate [causation]"); *see also Paez v. Burlington N. Santa Fe Ry.*, 2015-NMCA-112, ¶¶ 9-26, 362 P.3d 116 (affirming the district court's grant of summary judgment in favor of the defendants because no reasonable jury could find that the allegedly negligent conduct caused the plaintiffs' damages).

**{31}** Here, Defendants' first motion for summary judgment sought to negate only the element of causation. The district court denied the motion by way of order dated February 17, 2016, reasoning that Plaintiff's response to the motion had raised questions of fact "as to whether Defendants' representation of Plaintiff before the Dental Board caused Plaintiff any damage as alleged." Subsequently, Plaintiff amended her complaint, and the parties engaged in discovery. In June 2017 Defendants again filed motions for summary judgment, arguing that the undisputed evidence showed no breach of the standard of care. Because the district court's 2016 decision addressed the element of causation, it was not the law of the case as to the 2017 motion, which sought to negate the element of breach of duty. Even if this were not so, the 2016 decision preceded discovery. Thus, in 2016 the district court did not finally decide the question of causation as a matter of law, but held that in the early stages of litigation, there were material disputes of fact foreclosing summary judgment in favor of Defendants. Accordingly, the 2016 decision was not the law of the case as to the 2017 decision. *See Cordova*, 2004-NMCA-087, ¶ 10.

**2.      Plaintiff Required Legal Expert Testimony to Show a Material Dispute of Fact on the Element of Breach of Duty**

**{32}** Plaintiff argues that summary judgment in favor of Defendants on Plaintiff's malpractice claims was improper, because legal expert opinion evidence was not necessary to demonstrate a breach of the standard of care in this case, where (according to Plaintiff) such breaches fall within the common knowledge of lay jurors. We disagree.

**{33}** Plaintiff's breach of contract and malpractice claims (Counts 1 and 5) both require a showing that Defendants breached the standard of care, "measured by the duty to apply the knowledge, care, and skill of reasonably well-qualified professionals practicing under similar circumstances." *Adobe Masters, Inc. v. Downey*, 1994-NMSC-101, ¶ 3, 118 N.M. 547, 883 P.2d 133. In such cases, breach of the standard of care "must be proved by expert testimony *unless* the case is one where exceptional circumstances within the common experience or knowledge of the layman are present." *Id.* ¶ 9; *Buke, LLC v. Cross Country Auto Sales, LLC*, 2014-NMCA-078, ¶ 51, 331 P.3d 942 (noting that "[e]xpert testimony is generally necessary to explain the applicable standard of conduct, and a plaintiff's failure to present expert testimony to support a professional malpractice claim is usually fatal"). In other words, expert testimony is essential unless negligence "can be determined by resort to common knowledge ordinarily possessed by an average person." *Pharmaseal Labs., Inc. v. Goffe*, 1977-NMSC-071, ¶ 17, 90 N.M. 753, 568 P.2d 589. Courts in other states have found such exceptional circumstances where an attorney missed deadlines or stole client funds. *See Meyer v. Dygert*, 156 F. Supp. 2d 1081, 1091 (D. Minn. 2001). Similarly, expert testimony was deemed unnecessary where an attorney's breach of the standard of care was "egregious and obvious," such as failing to "appear in court on his client's behalf," to "notify a client of [the] termination of employment," to "inform a client of a settlement offer," to "follow a client's instructions and adequately insulate it from creditors," or to "file an action within the statute of limitations." *Wastvedt v. Vaaler*, 430 N.W.2d 561, 565 (N.D. 1988) (citations omitted). On the other hand, expert testimony is required where an attorney's representation involves, for instance, trial tactics, or specialized knowledge, since "a jury cannot rationally apply negligence principles to professional conduct without evidence of what a reasonable attorney would have done under the circumstances and the jury may not be permitted to speculate about what the professional custom may be." *Id.* at 566; *see Sanders v. Smith*, 1972-NMCA-016, ¶ 16, 83 N.M. 706, 496 P.2d 1102 (holding that "[a] lay witness does not have the experience, knowledge and wisdom to opinionate on the complexities of trial practice"); *see also Meller v. Bartlett*, 580 A.2d 484, 485 (Vt. 1990) (holding that "claims of failure to account, conflict of interest, and unauthorized hiring of another attorney should be judged against professional standards verified by an expert").

**{34}** Here, Plaintiff claims that expert testimony was unnecessary because a lay person could conclude that Defendants committed malpractice by effectively causing her to violate the law by advising Plaintiff that she could continue to work even after the Board's issuance of the August 11, 2011 letter. The undisputed material facts do not support this assertion. Plaintiff consistently maintained that, at the time the Committee referred Plaintiff to the Attorney General's Office, she was certified to administer anesthesia in New Mexico but was unable to find proof of her certification. Plaintiff

referred to the Board's lack of a record of her certification as a "clerical error." Plaintiff produced documentation proving that she completed anesthesia coursework, was licensed to perform anesthesia in other states, and had applied for certification in New Mexico. Thus, Defendants advised Plaintiff that she could continue working while they tried to resolve the issue of *proving* her certification—they did not advise her to work *uncertified*. According to expert witness Ms. Nowara, Defendants' reliance on Plaintiff's representations about her certification was reasonable, particularly given that Plaintiff has her own professional and ethical duties and is obligated to understand the requirements of licensure. Ms. Nowara further opined that it was reasonable for Defendants to understand that the August 11, 2011, letter was not a "cease and desist" request, in and of itself, but a notification that a proposed settlement including compliance with such an order would be forthcoming. There is no evidence that, after the August 11, 2011 letter, until the termination of Defendants' representation of Plaintiff, any action was taken with respect to Plaintiff's license, by the Committee or the Attorney General's Office. Thus, although Defendants' advice that Plaintiff could continue working may not have been the most prudent advice, we do not think that a lay person could conclude that it amounted to a directive that Plaintiff should violate Section 61-5A-4(D), or 16.5.28.8.10 NMAC (containing certification requirements for local anesthesia administration).

**{35}** Plaintiff asserts that, even if Defendants did not advise her to violate the law, it is obvious that Defendants should have warned Plaintiff about the potential consequences of continuing to administer anesthesia—including the possible revocation of Plaintiff's license. But the August 11, 2011, letter from the Committee contained the warning that Plaintiff was being referred to the Attorney General's Office for issuance of a NCA for violation of the laws and regulations governing certification, including Section 61-5A-21(A)(7), which provides that the Committee "may deny, revoke, suspend, stipulate or otherwise limit any license or certificate . . . upon findings by the board or the committee that the licensee, certificate holder of applicant . . . has violated any provisions of the Dental Health Care Act or rule or regulation of the board or, as relates to the practice of dental hygiene, the committee." In other words, the potential impact on Plaintiff's license was apparent from the letter that led Plaintiff to seek counsel from Defendants in the first place. Plaintiff and Defendants' email exchanges also imply that Plaintiff understood the seriousness of the potential consequences, should she be unable to prove her certification status; accordingly, the parties discussed Plaintiff re-taking the requisite certification course and examination, which she did. For these reasons, the reasonableness of Defendants' failure to overtly advise Plaintiff that her license could be revoked, should she be unable to prove her certification status, required evidence of what a reasonable attorney would have done under the circumstances—evidence in the form of the testimony of lawyers. *Sanders*, 1972-NMCA-016, ¶ 14.

**{36}** Plaintiff further argues that a lay person would understand that Defendants should not have "sat idly by and did nothing as Plaintiff lost the value of her case." *See George v. Caton*, 1979-NMCA-028, ¶ 40, 93 N.M. 370, 600 P.2d 822. But *George* was "limited to the failure of defendants . . . to commence an action [on behalf of plaintiff] within the statutory period of limitations." *Id.* ¶ 33. In that case, we held that "[i]t does not

require expert testimony to establish the negligence of an attorney who is ignorant of the applicable statute of limitations or who sits idly by and causes the client to lose the value of his claim for relief." *Id.* ¶ 40. Plaintiff argues that, here, if Defendants had not simply advised her to "sit tight," and had instead advised Plaintiff to obtain reciprocal certification (through reactivating her certification in another state), Plaintiff could have obtained a new certification in New Mexico within six to eight weeks, and would not have lost her job, through which she had been earning $70,000 per year. Setting aside that many of the underpinnings for this argument cannot be gleaned from the undisputed factual record, this is precisely the sort of issue that requires expert testimony from a lawyer. Defendants advocated for Plaintiff through correspondence with the Committee and the Attorney General's Office, and advised Plaintiff as early as September 2011 that becoming recertified in New Mexico through retaking the relevant course and exam may be the "path of least resistance" toward resolving her need for proof of certification. Furthermore, Defendants stated in the affidavit that it was a strategic choice on his part not to request that Plaintiff's matter be placed on the Committee's agenda. According to Ms. Nowara, Defendants' advice in this regard was sound, as it allowed Plaintiff the opportunity to either locate or replace her certification while avoiding the issuance of an NCA. The practice of law "is not an exact science[;]" accordingly, "a lawyer is not liable for every mistake" or less favorable decision in the practice of law. *Id.* ¶ 39. A lay person would require guidance in order to weigh the reasonableness of Defendants' strategy and counsel in light of Plaintiff's contention that Defendants should have instead counseled her to reactivate a license in another state and seek reciprocity.[7]

**{37}** For all these reasons, we conclude that expert testimony was required to show a material dispute of fact on Plaintiff's malpractice claims, Defendants having set forth facts showing no breach of the standard of care, particularly here, where Defendants negated the element of breach through an affidavit from a legal expert, Ms. Nowara. These facts are (as we have discussed) deemed admitted. Rule 1-056(D)(2). Moreover, even if Dr. Downey's affidavit (attached to Plaintiff's response) had been properly presented, we reject Plaintiff's final contention—that Dr. Downey's affidavit constituted an "expert opinion" sufficient to create a material issue of fact as to breach of the standard of care applicable to an attorney.

**{38}** Plaintiff argues that, because dentists regulate the Dental Board, they are "as competent" as a lawyer would be to testify regarding professional standard of care in proceedings before the Board. Specifically, she asserts that dentists, in the context of Board proceedings, have the "knowledge and wisdom" to provide opinions on professional practice before the Board. *See Sanders*, 1972-NMCA-016, ¶ 16. Proceedings before the Dental Board are administrative proceedings in which licensees

---

[7]Plaintiff also argues, on appeal, that Defendants ought to have requested a hearing from the Board under NMSA 1978, Section 61-1-4(D), (E) (2003), but she did not raise this argument below. We do not address arguments raised for the first time on appeal. *Benz v. Town Ctr. Land, LLC*, 2013-NMCA-111, ¶ 24, 314 P.3d 688 (holding that, in general, an issue is not preserved unless the appellant "fairly invoked a ruling of the trial court on the same grounds argued in the appellate court" (internal quotation marks and citation omitted)). Moreover, these subsections appear to apply only where an NCA was issued—and there is no evidence of such issuance here.

are entitled to procedural protections and representation by an attorney or another licensed member of their profession (or both). *See* NMSA 1978, § 61-1-8 (1981). But the fact that licensed members of the profession may also assist a licensee in proceedings before administrative boards does not render them experts on *legal* malpractice in such proceedings. "Expert testimony in claims of legal malpractice means testimony of lawyers." *Sanders*, 1972-NMCA-016, ¶ 14. A lawyer and a dentist do not have the same training, education, experience, or professional requirements, and they bring to bear different areas of expertise in assisting a licensee before the Board. For instance, a dentist would not be knowledgeable about the issuance of subpoena, but would be able to assist a licensee in understanding oral health care regimens for patients. Therefore, although a dentist holds certain knowledge about requirements for professionals appearing before the Dental Board, a dentist is not qualified to opine about the standard of care for a lawyer representing a licensee before the Dental Board. The relevant "recognized standards of . . . practice in the community" are those in the legal community, and Dr. Downey cannot opine on those standards. *Id.*

**{39}** We briefly address and reject Plaintiff's contention that the grant of summary judgment should be reversed because the district court failed to consider the entire record when rendering its decision. Plaintiff does not identify the evidence the district court purportedly failed to consider, with the exception of the court's "prior order denying summary judgment on causation[,]" which we have already held was not the law of the case, and was irrelevant to the breach of duty issues raised by the subsequent summary judgment motion. "We will not search the record for facts, arguments, and rulings in order to support generalized arguments." *Muse v. Muse*, 2009-NMCA-003, ¶ 72, 145 N.M. 451, 200 P.3d 104.

## C. The District Judge Properly Granted Summary Judgment in Favor of Defendants on Plaintiff's Misrepresentation and Fraud Claims

**{40}** Plaintiff argues that Defendants' motion for summary judgment on Plaintiff's misrepresentation and fraud claims failed to meet its burden of showing the absence of any genuine issues of material fact requiring trial. We disagree.

**{41}** Defendants had the "initial burden of negating at least one of the essential elements" of each claim; however, "to satisfy the threshold requirement of making a prima facie showing of entitlement to summary judgment, [Rule] 1–056(C) does not require a moving party to support its motion with affidavits of . . . experts or other sworn testimony *affirmatively disproving* [the plaintiff]s' claims." *Blauwkamp*, 1992-NMCA-048, ¶¶ 14-15 (emphasis added). Rather, the moving party may show through "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits" that "the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.* ¶¶ 15-16 (internal quotation marks and citations omitted)).

**{42}** Plaintiff argues that Defendants' "statement to her that she must have a lawyer represent her [in the Board matter] is enough to state a claim for fraud[,]" because it is

demonstrably false, and because she relied on Defendants' advice to her detriment and if he had not made the statement, she would not have hired him. Fraud requires proof, by clear and convincing evidence, that: (1) "a representation of fact was made which was not true"; (2) "either the falsity of the representation was known to the party making it or the representation was recklessly made"; (3) "the representation was made with the intent to deceive and to induce [the claimant] to rely on the representation"; and (4) "[the claimant] did in fact rely on the representation." UJI 13-1633 NMRA. Here, assuming that Defendants' email statement that "you must have a lawyer take care of this" should be taken literally, as a statement that representation by a lawyer is legally required in Board proceedings, and that this representation was therefore false, there is no genuine dispute of material fact as to Defendants' intent. Defendant Cadigan, in his affidavit in support of summary judgment, stated that he advised Plaintiff that she must have an attorney represent her to convey that he believed Plaintiff should have a lawyer assist her in a matter where she was threatened with an NCA against her professional license. Expert witness Ms. Nowara opined, in her attached affidavit, that it was appropriate for Defendants to advise Plaintiff to retain counsel in response to the August 11, 2011 letter from the Board, because in Ms. Nowara's extensive experience, licensees have a greater chance of success in disciplinary matters if they are represented by counsel, and the Boards are accustomed to such representation. As we have said, because Plaintiff "failed to specifically controvert Defendants' material facts with affidavits or admissible evidence" these facts are deemed admitted. Rule 1-056(D)(2), (E). Moreover, we agree with the district court that Plaintiff's affidavit (and attachments) in support of summary judgment contains no evidence from which a fact-finder could infer that Defendants, through saying that Plaintiff "must" have a lawyer represent her, intended to deceive Plaintiff into believing that she was *legally required* to retain an attorney in the Board matter. *Lopez v. Townsend*, 1938-NMSC-058, ¶ 49, 42 N.M. 601, 82 P.2d 921 (stating that where "circumstantial evidence is relied upon for recovery," the inference sought by the plaintiff must be "the more probable hypothesis"). Plaintiff's argument and speculation to the contrary, set forth in her response and attached affidavit, are not evidence upon which a court can rely in a summary judgment proceeding. *See V.P. Clarence Co. v. Colgate*, 1993-NMSC-022, ¶ 2, 115 N.M. 471, 853 P.2d 722; *Springer Corp. v. Dallas & Mavis Forwarding Co.*, 1976-NMCA-130, ¶ 11, 90 N.M. 58, 559 P.2d 846 ("An inference which will support a judgment cannot be supposition or conjecture, but must be a logical deduction from facts proven.").

**{43}** Plaintiff next argues that, in the affidavit attached to her summary judgment responses, she set forth "several allegations of fraud" supported by documented evidence in the form of emails and letters that Defendants wrote, and that these allegations "are sufficient to establish a genuine issue of material fact[] sufficient to withstand . . . summary judgment." Relatedly, Plaintiff (again) argues that the district court failed to consider the whole record. But Plaintiff fails to identify any of the several allegations that she claims create a material dispute of fact, and does not say what portion of the record the district court failed to consider. We "will not search the record to find evidence to support an appellant's claims[,]" *In re Estate of Heeter*, 1992-NMCA-032, ¶ 15, nor "search the record for facts, arguments, and rulings in order to support generalized arguments." *Muse*, 2009-NMCA-003, ¶ 72.

**D.      Audio Recording of Proceedings**

**{44}**    Plaintiff's final argument is that the district court should have granted her request that the hearings in her case be recorded, citing her October 2015 motion for "all hearings" to be audio recorded. Plaintiff claims that she "made important statements in hearings that have been removed, scrambled or come out as inaudible," but does not explain or proffer an example of even one of these purported errors. More importantly, Plaintiff cites no authority for the proposition that it was an abuse of the district court's discretion to refuse audio recording, when a stenographic recording of the proceedings was taken. Where a party cites no authority for a proposition, we assume that none exists, and we do not consider it on appeal. *ITT Educ. Servs., Inc. v. Taxation & Revenue Dep't of State of N.M.*, 1998-NMCA-078, ¶ 10, 125 N.M. 244, 959 P.2d 969; *see In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329.

**Conclusion**

**{45}**    We affirm.

**{46}    IT IS SO ORDERED.**

**LINDA M. VANZI, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**JULIE J. VARGAS, Judge**